No. 12233

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

JERSEY CREAMERY, INC.,
a corporation,

Plaintiff and Respondent,

-vs-

THE BOARD OF MILK CONTROL OF THE
MONTANA DEPARTMENT OF BUSINESS REGULATION,
an administrative agency of the State of
Montana,

Defendant and Appellant.

---

Appeal from: District Court of the First Judicial District,
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Geoffrey L. Brazier argued, Helena, Montana.

For Respondent:

Hughes, Bennett and Alan F. Cain, Helena, Montana.
George T. Bennett argued, Helena, Montana.

---

Submitted: September 26, 1972

Decided: OCT 17 1972

Filed: OCT 17 1972

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a declaratory judgment entered for plaintiff in the district court of the first judicial district, county of Lewis and Clark.

Plaintiff is Jersey Creamery, Inc., a corporation, doing business as a dairy. Defendant is the Board of Milk Control, an administrative agency of the state of Montana. Hereinafter plaintiff will be called "Jersey" and defendant "Board".

Jersey operates what are known as "Quality Chekd" dairies, and is a member of the Quality Chekd Dairy Products Association. Jersey proposed a scholarship contest whereby the fact of the contest would be advertised on its milk cartons and through other advertising media throughout the state. Applicants for the scholarship were not required to purchase anything from Jersey, but merely to complete an application blank. These blanks were found on the cartons, but any applicant could make his own application form, as long as it contained the necessary information. These applications were then to be given to an independent agency to pick the winners by a drawing. All applications except those of non-residents of the state or employees of Jersey were eligible to win the contest. There was no necessity for the purchase of any of Jersey's merchandise to be eligible to win. Winners of the contest received funds to be applied toward a college education, the funds to be paid directly to the college of the winner's choice.

Jersey informed the Board of its proposed scholarship contest as part of a national "Quality Chekd" program. The Board informed Jersey this contest would violate the Montana Milk Control Act and that the contest was prohibited. Jersey then appealed to the full Board, thereby exhausting its administrative remedies.

The final ruling of the Board was that the scholarship contest violated specific sections of the Milk Control Act and regulations of the Board. A declaratory judgment action was commenced in the district court. The facts being admitted and there appearing to be no need for an evidentiary hearing, the court concluded that the proposed scholarship contest was not prohibited. The court stated the provisions of section 27-414.1 and section 27-414.2, R.C.M. 1947, are applicable only to trade practices which would result in decreasing prices actually paid for milk products below those fixed by the Board, and that this contest would not result in such a lowering of prices.

The pertinent issue here is whether the district court was correct in ruling, as a matter of law, that the scholarship contest was not in violation of the Milk Control Act of the state of Montana as contained in Chapter 4, Title 27, R.C.M. 1947, and regulations promulgated thereunder.

The principal purpose of the Milk Control Act was to insure an adequate supply of healthful milk. One of the methods to insure such supply is to control the price of milk at the various stages from producer to ultimate consumer. To aid the Board to accomplish this the legislature has empowered the Board to prohibit any practices, however disguised, which would allow a member of the milk industry to reduce the price of milk below that set by the Board. This Court has previously ruled that the regulation of the milk industry was a proper exercise of the state's police power and that the milk industry was an industry affected with a public interest. Milk Control Board v. Rehberg, 141 Mont. 149, 376 P.2d 508.

The Board contends that under case law, statutes, and regulations this contest is barred; and specifically under

section 27-414 (b)(c), R.C.M. 1947, which reads:

"In addition to the general and special powers
heretofore set forth, the board shall have the
power to make and formulate reasonable rules and
regulations governing fair trade practices as they
pertain to the transaction of business among
licensees under this act and among licensees and
the general public. Such reasonable rules and
regulations governing fair trade practices shall
contain, but shall not be limited to, provisions
regarding the following methods of doing business
which are hereby declared unfair, unlawful, and
not in the public interest:

"* * *

"(b) The giving of any milk, cream, dairy products,
services, or articles of any kind, except to bona
fide charities, for the purpose of securing or re-
taining the fluid milk or fluid cream business of
any customer.

"(c) The extension to certain customers of special
prices or services not available to all customers
who purchase milk of like quantity under like terms
and conditions."

From the authority of the legislature, the Board is not

limited to this statute, but can make additional regulations

to govern fair trade practices. The Board relies on the

following regulations:

"Regulation 30: The giving of any milk, cream, dairy
products, services, or articles of any kind, except to
bona fide charities, for the purpose of securing or
retaining the fluid milk or fluid cream business of
any customer."

"Regulation 31: The extension to certain customers of
special prices or services not available to all customers
who purchase milk in like quantity under like terms and
conditions."

"Regulation 35: The giving or agreeing to give, dis-
counts, whether in the form of money, merchandise,
coupons, stamps, prizes, bonuses or premiums in any
form or the buying or selling of any merchandise condi-
tional upon the sale of fluid milk products which would
directly or indirectly reduce the monetary value of
such products below the minimum price established by
Official Order of the Milk Control Board."

"Regulation 36: The using of such items as bottle caps,
cartons, stamps, coupons, or any other item distributed
with milk sold at retail or wholesale to qualify a person
to receive a prize, award, or any other thing of value,

which would directly or indirectly reduce the
monetary value of fluid milk or fluid milk pro-
ducts below the minimum retail or wholesale price
established by Official Order of the Milk Control
Board."

According to the Board, Regulation 30 would require the
meeting of two criteria before a transaction would attain
prohibited status. There must be (1) the act of giving of
services or articles of any kind, and (2) the intent to secure
or retain fluid milk or fluid cream business of any customer.
In the view of the Board, the scholarship contest falls within
such prohibited activity. This Court cannot sustain such view
with respect to the contest involved here.

Section 27-414, R.C.M. 1947, and Regulations 30 and 31 state
specifically the nature of unfair trade practices which are to
be prohibited and regulated by the Board. It is clear from
these statutes and regulations that the only unfair trade
practices which are to be prohibited are those schemes and
devices that result in effectively lowering the price of milk
below the minimum set by the Board. Such devices can be secret
rebates, refunds, unearned discounts, the giving away of pro-
ducts or other valuable items to customers, extension of special
prices or services, or the giving of rebates or discounts in
the form of prizes to customers to induce them to buy and continue
to buy milk.

Regulations 35 and 36 prohibit trade practices which would
reduce the price of milk below that set by the Board. These
regulations prohibit the giving of discounts of any type, for
the buying of milk. They also prohibit the use of bottle caps,
cartons, stamps, etc. to qualify a person to receive a prize,
which would directly or indirectly reduce the price of milk.

However, there is nothing in the authority granted the
Board to regulate advertising or promotional schemes, unless

they would constitute such above mentioned activity. Clearly in this case the scholarship contest does not directly or indirectly affect the price of milk charged by Jersey or paid by its customers. As heretofore mentioned, persons applying for the scholarship did not have to buy anything to enter or win. It is true that the intent of Jersey is to draw noncustomers into purchasing their milk products, however this method of advertising is not prohibited by law. This type of advertising in no way affects the price of milk paid by the customers, and therefore is not prohibited. In no sense, is such a contest an "unfair trade practice" and the Board has no authority to control it.

The statutes allow the Board to make other such reasonable and necessary regulations as it deems necessary; but there is nothing in the statutes or regulations now promulgated by the Board, which would make the scholarship contest prohibitive. This does not answer the question of whether the Board could make regulations to prohibit this type of activity, but that question is not before this Court.

The final argument presented by the Board is that the district court erred when it concluded that the circumstances of the case related to the provisions of sections 27-414.1 and 27-414.2, R.C.M. 1947. We cannot agree.

It is true these sections were not specifically mentioned in the pleadings, however that point does not settle the issue. The Board itself cited section 27-414, R.C.M. 1947, in denying Jersey the right to participate in this contest. It is the duty of the district court in making its determination upon the law to consider the entire Milk Control Act and all provisions therein bearing upon the question, and to further consider all provisions thereof cited by counsel. The district court is not limited to only those statutes which are cited in the pleadings. There was

no error by the district court when it included these sections in its conclusions of law. These sections were pertinent to the case and were correctly considered.

The judgment of the district court is affirmed.

_Wesley Castles_
Associate Justice


We Concur:

_James T. Harrison_
Chief Justice

_____

Associate Justices.

Mr. Justice John Conway Harrison dissenting:

I dissent.

The ruling of the district court should be reversed. Regulation 30 of Official Order 614-C, provided for by section 27-414, R.C.M. 1947, if liberally interpreted prohibits just such a scheme as provided in this contest. In opening the corral gate and allowing this cow out of the corral, it is safe to predict that distributors will devise all types of contests in the name of advertising which will ultimately affect the sales price of a quart of milk. Such trade practices are not within the "public interest" as declared by section 27-401, R.C.M. 1947.

John Conway Harrison
Associate Justice